# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GREGORY MITCHELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. CIV-06-418-S |
| | ) | |
| MARTY SIRMONS, | ) | |
| | ) | |
| Respondent. | ) | |

## Order and Opinion

Petitioner, an inmate in the custody of the Oklahoma Department of Corrections (DOC) and currently incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in Okmulgee County District Court Case Number CF-2004-147 for running a road block (Count 1), attempting to elude police officer (Count 2), each after former conviction of two or more felonies and resisting an officer (Count 4). Petitioner was sentenced to ten years imprisonment on Count 1, life imprisonment on Count 2, and one year in the county jail and a $500.00 fine on Count 4. He sets forth the following grounds for relief:

> His case must be reversed and remanded for a new trial because there is no record of his waiver of his right to counsel; insufficient evidence was presented at trial to support his conviction for running a roadblock; and Petitioner's sentences are excessive and should be modified out of a sense of justice.

Respondent has submitted the following records to the court for consideration in this matter:

a. Opening Brief of Appellant filed October 12, 2005.

b.  Brief of the Appellee to the Oklahoma Court of Criminal Appeals filed February 9, 2006.

c.  Summary Opinion of the Oklahoma Court of Criminal Appeals filed June 19, 2006.

d.  Transcript of the Jury Trial held March 9 and 10th 2005.

e.  Original Record (Volume I).

f.  Transcripts of the Preliminary Hearing held November 2, 2004.

g.  Transcript of hearing held February 25, 2005.

h.  Transcript of the Sentencing hearing March 16, 2005.

## FACTS

Petitioner was tried by a jury in Okmulgee County District Court, Oklahoma, on charges of running a roadblock, attempting to allude an officer, assault and battery with a dangerous weapon, all after former conviction of two or more felonies, and a misdemeanor count of resisting an officer. The jury found the Petitioner guilty on the charges of running a road block, attempting to allude an officer and resisting an officer. The jury recommended punishment of ten (10) years on running a road block, life imprisonment on attempting to allude an officer and one year in the county jail with a $500.00 fine on the resisting an officer charge. A sentencing hearing was held on March 16, 2004, and the trial court sentenced the Petitioner in accordance with the jury's recommendations. Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals, Case No. F-2005-284. The court affirmed the Petitioner's convictions. Petitioner then filed this habeas action.

## I. Waiver of Right to Trial Counsel

In his first ground for recovery, Petitioner asserts his waiver of trial counsel was not valid. Petitioner raised this claim on direct appeal and the Oklahoma Court of Criminal Appeals denied it on its merits. That court found the record reflected Petitioner knowingly and voluntarily waived counsel. Petitioner fails to prove that the decision of the Oklahoma Court of Criminal Appeals was contrary to or an unreasonable application of Supreme Court law.

Under the revised federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This standard requires the habeas court to determine whether or not the state court decision is an unreasonable application of Supreme Court law. Williams v. Taylor, 529 U.S. 362, 407 (2000).

The Sixth Amendment to the United States Constitution grants to the accused the right to make his defense. Faretta v. California, 422 U.S. 806, 819 (1975). The Tenth Circuit Court of Appeals has stated that an accused may invoke his right to represent himself, but to invoke that right the accused must

3

waive his right to counsel "voluntarily" and "knowingly and intelligently". Braun v. Ward, 190 F. 3d 1181, 1185 (10th Cir. 1999)(internal citation omitted). It is well settled law that before a trial court grants an accused's request to represent himself it must make certain Petitioner is "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835. A habeas court reviews *de novo* whether a waiver of trial counsel is voluntary, knowing and intelligent. Braun, 190 F. 3d at 1185.

After the state's opening statement, Mr. Barker, Petitioner's court appointed trial counsel, brought to the court's attention Petitioner's desire to make "a very important motion" to the trial court. (Tr. I 101). Petitioner then expressed his concern that several key witnesses had not been called, and requested that the court make him "primary defense counselor", but order Mr. Barker to stay as an advisor to make necessary objections and cross-examinations" of Petitioner when he testified. (Tr. I 103). The trial court initially denied Petitioner's request but when the prosecutor stated his concern that Petitioner may use the trial court's denial of his request as an appeal ground, the trial court agreed to more fully consider the same after recess. (Tr. I 106).

After the recess, Petitioner reiterated his request to proceed *pro se* because defense counsel had not called all the witnesses he thought should be called. (Tr. I 107-110). The trial court sought and received explicit clarification from Petitioner that he was asking the trial court to allow him to represent himself. (Tr. I 109-110). The trial court then asked Petitioner if he understood the dangers and disadvantages of self-representation. (Tr. I 110). Petitioner stated he did but

4

felt he had no other choice but to represent himself.  Petitioner stated this was his fourth jury trial.  He further stated he had no formal legal training and expressly stated he understood that he was at a disadvantage going up against a seasoned prosecutor. (Tr. I 109-111).  After this line of questioning, Petitioner again stated his dissatisfaction with the pubic defender arguing that his lawyer was not prepared to try his case, but was only prepared to fail.  Petitioner claimed the trial counsel had failed to visit with him to obtain the facts of the case and to call important witnesses.  (Tr. I 111-112). Petitioner responded that the witnesses he wished to call had nothing to do with his insanity defense.  (Tr. I 112).

The trial court stressed to the Petitioner he was trying to afford him the best counsel under the circumstances, but warned Petitioner he was "very skeptical" about his ability to represent himself, noting "I think it is a ... mistake to allow you to proceed without counsel." (Tr. I 116).  The trial court stated he would allow the court appointed lawyer to be an advisor and reiterated his concern with the statement, "I have serious questions as to whether or not you can adequately represent yourself in a court of law that would give you the best representation." (Tr. I 116).

The trial court once again inquired of Petitioner if he clearly understood that he was not legally trained and the trial court could not possibly begin to explain all the problems with self-representation.  The trial court stated "The dangers are not knowing how to cross-examine and how to stay within the procedural guidelines that are necessary that people are trained to do can create very dangerous aspects for you..." (Tr. I 117). The trial court admonished Petitioner that the court could not

5

"come down off the bench and represent him." Petitioner acknowledged he was aware of these dangers. (Tr. I 117).

This court finds the Petitioner was throughly warned of the dangers of representing himself. The trial court noted that Petitioner had been through three previous jury trials. The court also specifically stated to Petitioner the disadvantages of representing himself: he was going up against trained attorneys, Petitioner was untrained and did not know how to cross-examine or stay within procedural guidelines, and the trial court could not act as his counsel. Despite all of these admonitions Petitioner still decided to represent himself. This court finds the decision of the Oklahoma Court of Criminal Appeals that Petitioner's waiver of the right to trial counsel was knowing and voluntary is neither contrary to nor an unreasonable application of Supreme Court law. Williams, 529 U.S. at 409-410.

In his Petition, Petitioner claims that his request to the court was not to represent himself but was for new counsel. In United States v. Silkwood, 893 F.2d 245, 248 (10th Cir. 1989), the Tenth Circuit stated that "for the waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing *pro se.*" Here Petitioner's complaint about counsel stemmed from the fact, the lawyer did not visit him the first 6 months while in jail, that he did not know the facts of the case and the lawyer had refused to call witnesses which Petitioner thought were vital to his defense. Mr. Barker stated that he was aware of Petitioner's witnesses but had decided not to call them to testify. (Tr. II 123-24). The trial court noted that the witnesses and evidence that Petitioner wished to put forth were not relevant to this criminal action. The court stated their

testimony was irrelevant to the accused's guilt or innocence of the criminal charges. (Tr. I 111-114). The trial court stated several times on the record Petitioner did not set forth any facts proving his trial counsel was not prepared to fully represent him in this trial. The record seems to reveal that Petitioner wholly failed to establish that he was forced to choose between incompetent counsel and proceeding *pro se*. Silkwood, 893 F.2d at 248.

Petitioner was fully aware if he persisted with his request to remove his court-appointed counsel, he would be electing to proceed *pro se*. When the trial court specifically stated he was not prepared to give Petitioner new counsel, Petitioner thanked him and again thanked him after the trial court stated he was "prepared to let him represent himself since he made a demand on the court to do so, and have Mr. Barker stand to be what we call standby counsel."(Tr. I 119). Based on the record in this case, its is apparent Petitioner was "aware of the dangers and disadvantage of self-representation," and that he made the choice to waive trial counsel and represent himself with "eyes wide open". Faretta, 422 U.S. at 835. The decision of the Oklahoma Court of Criminal Appeals finding Petitioner's waiver of the right to trial counsel was knowingly and voluntary is neither contrary to nor an unreasonable application of Supreme Court law. Williams, 529 U.S. at 409-10. Accordingly, Petitioner's first ground for habeas relief must fail.

## II.  Sufficiency of the Evidence

In his second ground for relief, Petitioner claims the evidence is insufficient to support his conviction for running a roadblock. Petitioner must show the decision of the Oklahoma

Court of Criminal Appeals was contrary to or an unreasonable application of Supreme Court Law.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." Case v. Mondagon, 887 F. 2d 1388, 1392 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." Wright v. West, 505 U.S. 277, 296 (1992). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing United States v. Edmondson, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir.), cert. denied, 498 U.S. 904 (1990)(citing United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the court first must

look to Oklahoma law for the elements required for the crime. The applicable statute provides in pertinent part:

> A roadblock is defined as a barricade, sign, standing motor vehicle, or similar obstacle temporarily placed upon or adjacent to a public street, highway, turnpike or area accessible to the motoring public, with one or more peace officers in attendance thereof directing each operator of approaching motor vehicles to stop or proceed.
>
> Any operator of a motor vehicle approaching such roadblock has a duty to stop at the roadblock unless directed otherwise by a peace officer in attendance thereof and the willful violation hereof shall constitute a separate offense from any other offense committed. Any person who willfully attempts to avoid such roadblock or who willfully passes by or through such roadblock without receiving permission from a peace officer in attendance thereto is guilty of a felony. 21 O.S. A. § 540B (2001).

The evidence presented at trial showed that Officer Gresham used his patrol unit as a roadblock. Officer Gresham was in his unit and directing oncoming motorist to stop with his red and blue overhead lights. As the officers pursued Petitioner, Cpl. Goodwin observed Gresham's patrol unit parked crossways on Gun Club Road, covering as much of the two lanes of traffic as he could with the length of the car. (Tr. I 150-51, 183). Cpl. Goodwin also saw that Officer Gresham's red and blue lights were on for the roadblock. (Tr. I 150).

Officer Harrell saw Officer Gresham's marked police unit sitting sideways in the road with his lights on. (Tr. I 246). As Petitioner's car approached the roadblock, he showed no sign of slowing down and at the last minute, Officer Gresham pulled forward into the Best Western parking lot. (Tr. I 247). Officer Harrell testified the purpose of Officer Gresham's moving the car forward was to not let Petitioner pass, but to not get hit

9

by Petitioner, which collision would have killed the officer. (Tr. I 248, 269).

Officer Blosch testified Officer Gresham's marked police unit was sitting across Gun Club Road with its emergency red and blue overhead lights activated. (Tr. II 88-89). Officer Gresham pulled his car forward off the road as Petitioner continued to drive toward the roadblock and was about to strike his car. (Tr. II 90).

Officer Gresham testified he was checking the Best Western Parking lot for Petitioner when he got a call on the radio that Petitioner was coming his way on Gun Club Road. (Tr. II 11). From the time he received this information, Officer Gresham had approximately thirty seconds to set up the roadblock, which he did by blocking half of Gun Club Road with his vehicle and turning on his car's overhead lights to make Petitioner stop. (Tr. II 7, 12-13). Once he got his car into position, he spotted Petitioner's headlights coming over the hill toward him, with the other police officers in pursuit. (Tr. II 13-14). Officer Gresham sat there as Petitioner drove straight toward him until Petitioner's car was within forty feet of his car. (Tr. II 14). At that point, seeing no sign that Petitioner was slowing down for the roadblock, Officer Gresham pulled forward to prevent Petitioner from running into his vehicle and causing injury to either the officer or himself. (Tr. II 14-15). Officer Gresham realized that with the wet road conditions, forty feet was not enough time for Petitioner to brake, even if he had tried. (Tr. II 22).

The evidence presented at trial shows that Officer Gresham's car was a "standing motor vehicle...placed upon...a public street" in accordance with 21 O.S.A. § 540B. It was only

Petitioner's testimony that Officer Gresham's car was in constant movement and was not standing still. (Tr. II 181-82). However, as shown above, the testimony of the State's witnesses established that Officer Gresham's marked patrol unit stood crossways in the street, and only moved when it was apparent that Petitioner was going to collide with it.  Officer Gresham specifically stated his vehicle sat sideways in the road with its light on "from the time [Petitioner] came over the hill...until [he] was within 40 feet of [Officer Gresham's] vehicle." (Tr. II 24).  That the officer moved his car at the last moment to avoid certain collision does not diminish the proof that the vehicle was standing in the road as a barricade, and Petitioner wilfully failed to stop.

In addition to the standing motor vehicle which was Officer Gresham's marked police unit, Officer Gresham was the peace officer in attendance at the roadblock.  In this case, Officer Gresham was using his patrol car's overhead lights to direct the oncoming traffic, specifically Petitioner, to stop at the roadblock he was attending.  Officer Gresham testified the purpose of the way he blocked the street with his car and the activation of his emergency lights was to make Petitioner stop. (Tr. II 12).  Cpl. Goodwin testified Officer Gresham's emergency overhead lights were activated for the roadblock. (Tr. I 150). In support of his claim that he did not realize Officer Gresham's car was meant to be a roadblock, Petitioner asked the officer on cross-examination if he had ever seen someone back into an intersection, then pull back up when the person sees other cars coming. (Tr. II 24).  Officer Gresham answered he had seen such situations, but not where the car in the road had overhead lights on and was being pursued by other police vehicles. (Tr. II 24).

Petitioner argues in this Petition, as he did on appeal to the Oklahoma Court of Criminal Appeals, that since the officer did not have time to exit his vehicle, there was no officer attending the roadblock. However, nowhere in the statute is there a requirement that the officer attending the roadblock be outside his vehicle, or any specific requirement as to how he is to direct the oncoming traffic in order to establish a roadblock. 21 O.S.A. § 540B (2001). The Oklahoma Court of Criminal Appeals found the evidence was sufficient to prove "that there was an officer 'in attendance' [of the roadblock] directing motorists."

Petitioner also claims he thought Officer Gresham was only backing out of the motel parking lot and pulled back when he saw Petitioner approaching, and that he did not notice any police cars behind him until he reached the highway. (Tr. II 181-82). To the extent Petitioner is arguing the relevance of his state of mind at the time he ran the roadblock, such an argument must fail as it attempts to turn this general intent crime into one of specific intent. 21 O.S.A. § 92 provides:

> The term "willfully" when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act of the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.

Thus, to prove Petitioner willfully ran the roadblock the State was not required to prove any intent on Petitioner's part beyond his act of failing to stop at the roadblock. In this regard the State presented evidence that Petitioner's car accelerated as it passed the Armory, where three police cars were sitting in the parking lot, and accelerated again when the officers pulled out

12

of the parking lot to pursue Petitioner with their lights and sirens activated. (Tr. I 144-47, 243-45, Tr. II 48, 84-87). Despite the fact that Officer Gresham's patrol unit was sitting sideways in the road up until Petitioner's car came within forty feet of it, Petitioner made no attempt to slow down or stop and had to leave the pavement to get around the roadblock. (Tr. I 150-51, 183, 246-47, Tr. II 12-15, 51-52, 88-91). Officer Gresham moved his car only to avoid a collision with Petitioner, which could have killed the officer. (Tr. I 248, 269, Tr. II 14-15). After Petitioner ran the roadblock, the chase ensued for another six miles at speeds reaching one hundred miles an hour, and ended only after Petitioner wrecked his car with Officer Harrell's unit. (Tr. I 152-64, 249-58, Tr. II 54-60, 92-98). This testimony overwhelmingly shows beyond a reasonable doubt that Petitioner's act of running the roadblock created by Officer Gresham was willful.

After careful review, the court finds the evidence was sufficient under the standard of Jackson v. Virginia to convict Petitioner of running a roadblock. This court finds the decision of the Oklahoma Court of Appeals in which it denied the Petitioner's claim of insufficient evidence is not contrary to or an unreasonable application of Jackson. Thus, the court finds this ground for habeas relief has no merit.

### III. Sentences

In his third ground for relief, Petitioner asserts his sentences are excessive and should be modified in the interest of justice. The Oklahoma Court of Criminal Appeals denied this claim on the merits on direct appeal. Respondent correctly asserts this claim is not a proper issue for federal habeas corpus because sentencing is a matter of state law. See Shafer

v. Stratton, 906 F.2d 506, 510 (10th Cir.), cert. denied, 498 U.S. 961 (1990).

> The Eighth Amendment's prohibition against imposition of cruel and unusual punishment requires that the sentence cannot be disproportionate to the severity of the crime or involve unnecessary infliction of pain. Again, the guiding rule is that the fixing of penalties for crimes is a legislative function, and the determination of what constitutes adequate punishment is left to the trial court's discretion; and if the sentence is within statutory limits, the appellate court will not regard it as cruel and unusual or excessive.

United States v. O'Driscoll, 761 F.2d 589, 599 (10th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1020 (1986). See also Gaines v. Hess, 662 F.2d 1364, 1370 (10th Cir. 1981). In order for Petitioner to be entitled to federal habeas relief based on an excessive sentence, he must show that "the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law." Hayes v. Butler, 825 F.2d 921, 923-924 (5th Cir. 1987). It is undisputed the terms of Petitioner's incarceration were within the limits allowed by statute. Because petitioner's sentence was not outside the statutory limits, habeas relief is not warranted.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus is **DENIED**, and this action is, in all respects, **DISMISSED**.

**IT IS SO ORDERED** this 20th day of February 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma